Dr. Mary Jo Cagle, M.D., Chief of Cardiothoracic Surgery, U.S. Department of Cardiothoracic Surgery, 17-2255, N. Re Maquet Cardiovascular, LLC. Mr. Clark. Good morning, Your Honors, and may it please the Court. The invention that is the subject of this application is a vascular graft having a textile layer and an expanded polytetrafluoroethylene layer, commonly referred to as PTFE. This substance may be familiar to you as Teflon. It's used in nonstick pans and other extremely slippery applications. These two layers are bonded to one another by an adhesive. As you can imagine, the field of vascular stents is an extremely crowded field. Yet at the time of this invention in 2001, no one had succeeded in making a graft having a textile layer and an expanded polytetrafluoroethylene layer bonded together. And the primary reason for this, as explained throughout the prosecution record, was that it was well understood to be exceptionally difficult to bond PTFE to anything, much less a textile layer that is going to be inserted into someone's body. Well, the Board acknowledged... How do I pronounce your client? Is it Maquet? Maquet, Your Honor. Okay. The Board acknowledged Maquet's evidence that it's difficult to bond to the PTFE, but they found that dew... As good as a guess of mine. ...provides a solution to the problem because it lists the nine types of polymers and... I mean, you presented evidence. I probably, honestly, if it was the fact finder, I would have found in favor of your position. But what I'm struggling with is I'm not the fact finder, and I have to give substantial evidence. And did the Board say enough by pointing at dew? So why don't you focus on why dew isn't sufficient for them to have concluded there was a reasonable expectation? Because I do think you provided a lot of evidence that people might have thought that bonding that substance to PTFE would be difficult. Sure, Your Honor. On the question of whether dew provides sufficient evidence, we contend that it is not. And there are four main points we wanted to raise. The first being that dew, like all of the references in the record, require the person of skill in the art to first choose from various embodiments and various disclosed materials, and to choose actually non-preferred materials. For example, in dew, while there is a list of various materials that can form each layer, as well as adhesives, if you look at what dew actually teaches and provides express disclosure of, it's of a metal underlying lattice work used in a silicone adhesive to bond to a textile layer. The reference to polycarbonate urethane adhesive is a one line sentence. The reference to PTFE is very brief, and it does not explore that. But it refers to Pinchuk, which is more than just one line. That's correct, Your Honor. We submit that if, in fact, dew had provided a reasonable expectation of success that polycarbonate urethane could be used in this situation, the reference would have disclosed its use for that purpose. Another important point we wanted to raise, Your Honors, is that you have to take this in context, and the context is provided by our declarations and the extrinsic evidence we submitted. At the time of this invention, and even still today, the context and the understanding of a person of skill in the art is that this type of bonding to this type of a substance is not expected to work. And while there is a mention in dew of the polycarbonate urethane adhesive, there's no working example, there's no detailed discussion in dew or any of the other references that would have informed a person of skill in the art that this common understanding, which even the Patent Office has agreed was the common understanding that this type of a substance is difficult to bond, that this would have worked in this circumstance. And again, if you look at the other references of record, you have Schmidt, which mentions adhesive again in passing, and teaches that the bonding can be by essentially melting a textile layer to the underlying layer. You have the Schoenard reference, which again teaches a metal stent as the preferred embodiment, and a silicon adhesive. And so all of this together, we submit that it's not sufficient evidence to show that a person of skill in the art would have had a reasonable expectation of success. You have quite broad claims. You're not claiming a specific material with a specific bonding agent. You've got very broad claims, and you start off with Schmidt, which discloses prosthesis in Schoenard, and then you've got dew, and dew does disclose the binding agent. It brings in Pinchuk as well. And so why isn't that substantial evidence? As Judge Moore said, we're not fact-finding. We're reviewing more decisions. First, I would like to address your question about, or your comment about, the breadth of our claims. Our claims are actually pretty narrow, we believe. Claim 1, for example, defines the second layer as being expanded polytetrafluoroethylene, and Claim 1 also defines the bonding agent as being a very specific type of polycarbonate urethane. So our claims are fairly narrow, and we are trying to claim this specific combination of materials that is nowhere combined in this manner in the prior art. And, as discussed in the briefing, we have a second grounds that we believe should be, that the rejection should be reversed for, and that is that the prior art does not enable the claims invention. And even though this is an obviousness case, the law still requires that the prior art enable the claimed invention. It's not enough that the prior art enables itself, it's that the prior art enables the claimed invention. Well, the application, including the application for the claimed invention, is that which must enable itself. And if it takes a component which is reasonably part of the prior art then the prior art doesn't need to have been enabled. I agree with you that references do not, references used in an obviousness rejection do not need to be individually enabled. They do not need to enable themselves to be applicable prior art. However, the law, we believe, is clear that the prior art has to enable the claimed invention. And here we believe that that enablement is lacking. If the prior art enables the claimed invention, the prior art probably anticipates the claimed invention. It may, but again, there could be multiple references that together, the question is whether the multiple references collectively enable the claimed invention. And that's the relevant inquiry here. And the enablement inquiry is, as your honors certainly know, is a de novo review. So here we have a little more deference to the standard, on the standard of review. And the four primary points we want to make as to why we believe that the prior art does not enable the claimed invention is that first, there's considerable and largely unrebutted evidence that it was known to be difficult to bond PTFE to anything. Our specification discusses this. The declarations discuss this point. The extrinsic evidence we presented also discusses this. And the examiner and the board agreed with that general statement. The examiner even went so far as to say that he agreed it wasn't expected that PTFE could bond without a surface treatment. But then there's no subsequent discussion of what surface treatments he envisioned. Second point, there's not a single working example where expanded polytetrafluoroethylene is bonded to a textile using an adhesive, even though this was an exceptionally crowded field. Virtually all of the references that are applied by the patent office mention PTFE, yet none of them provide any example where it's actually bonded. This was something that was at the forefront of everyone's mind at this time, yet no one was able to get it to work. The third point is there's not even an express mention of an expanded polytetrafluoroethylene layer, a textile layer, and a polycarbonate adhesive layer together. There are mentions of these elements individually, but you would be required to pick and choose from each of them in order to arrive at that combination. And finally, the final point is that we have expert testimony that the lack of bonding conditions such as a solvent and working examples in the prior art creates a situation where undue experimentation is required. The board addressed our enablement argument largely by leaning heavily on what a person of skill in the art would have known. However, as this court's Genentech case, which we discuss in the blue brief, mentions and discusses, you cannot rely on what one of skill in the art would have done if there's no evidence of it. And what's notable about that case, which has a lot of similarities with this case, is that in that case the court said that if it was within the skill of a person of ordinary skill in the art to enable and make and use the claimed invention, it would have been disclosed in the usual detail. And the opinion makes the case that patent practitioners are not loath to include examples when they know how to make and use something. And that case was on a preliminary injunction, and this court actually reversed the preliminary injunction and found as a matter of law that the underlying patent was not enabled. We submit here that if it was within the skill of a person of skill in the art to take the do or any of the other references and get a polycarbonate urethane to bond polytetrafluoroethylene to a textile, this would have been disclosed somewhere other than in a single sentence and do in a non-preferred embodiment. Unless there's other questions, I'll save my time for rebuttal. Let's save your rebuttal time and let's hear from the office. Ms. Lateef. May it please the court. Good morning, Your Honors. Monica Lateef for the United States Patent and Trademark Office. So chancellor evidence supports the board's findings that Maquette's claims are obvious over Schmidt and Due and Chouinard and Due. And the combinations provide a reasonable expectation of success that polycarbonate urethane would bind EPTFE with a textile layer. The argument that Maquette, I think I'm saying properly, apologize if I'm not, is arguing that there is no reasonable expectation of success is not the case. They have not pointed to reversible error in the board's decision. The reference Due, the secondary reference, provides guidance as to how a person of ordinary skill in the art would use polycarbonate urethane to bond a PTFE layer with a textile. And then you look to the primary references, either Schmidt or Chouinard, to see that those references taught that there is an adhesive that is used to bond an EPTF layer with a textile. They're silent as to the type of adhesive that is used, but that is where Due comes in. And this notion that Due doesn't give examples, Due discloses that you can use silicone, but it does say you can use polycarbonate urethane as an alternative. And a prior reference is a reference for all that it teaches. The fact that a person of ordinary skill in the art couldn't look at Due and realize if they're saying you can use polycarbonate urethane as an adhesive and understand that they can swap out the silicone, that doesn't make any sense. A person of ordinary skill in the art, and the board found, would be able to look to and understand that. And in fact, Due also talks about the fact that you would take a solvent and you would combine it with the adhesive, and then you could spray the PTFE layer. And the board found that a person of ordinary skill in the art would have the requisite skill to understand that and be able to do so. With respect to the enablement argument, I just want to be clear, what the office is With respect to enablement and obviousness, a piece of prior art itself is not required when there's an obvious rejection. You have to do the combination, as Judge Lori was discussing. And in addition to that, prior art is presumptively enabled, and it's up to McKay to prove that there was not enablement here. And the board said four times in its decision that they looked at all of the exhibits that were provided, that they considered both of the declarations, and that based on the express disclosure in Due, McKay did not meet its burden of establishing that there was no enablement. So basically, when you look at the references and you combine them together, there is substantial evidence that McKay's invention is obvious. And I respectfully ask that the court affirm the board's decision. And if there are no questions, I will yield my time. Thank you, Ms. Luchy. Thank you. Mr. Clark, tell us again how you get around the reference to Due. The Due reference, as we mentioned, has a very limited disclosure. I wouldn't even call it a disclosure, I'd call it a mention of polycarbonate urethane, which is the specific adhesive that we have disclosed. So on the idea that Due expressly discloses the use of polycarbonate urethane to bond PTFE, we would submit that it does not expressly disclose that, that you would have to pick and choose from among various different materials to arrive at that combination. On the enablement aspect, I think the argument was that... When I look later in Due, it mentions PTFE. I'm sorry, Your Honor? Due does mention not only the polycarbonate urethanes, but also PTFE. So it does disclose the fabric. That's correct. Our claim is actually directed to expanded polytetrafluoroethylene, which is a little bit different. I think Due discusses strands of PTFE that can be essentially wound together or formed into a latticework, whereas expanded polytetrafluoroethylene is more of a sheet that's been stretched. So if it's stretched, there's more opportunity for bonding, and that's why it works? That's possibly part of why it works. More of why it works, we believe, is that the specific solvent and the bonding conditions, we were able to discover those provided with the working content. So you're arguing the distinction between expanded PTFE and PTFE? I'm sorry? You're arguing the distinction between expanded PTFE and PTFE? That is one distinction with the Due reference. I agree with that. On the enablement argument, the Patent Office believes that Due provides guidance as to how to use polycarbonate urethane to bond to PTFE. We submit that it does not. It provides working examples and guidance on how to use a silicone material, but it does not translate to how to use a polycarbonate urethane. Our expert disclosure specifically addressed Due and said it does not provide the necessary bonding conditions and other necessary reaction conditions. Is there evidence showing that expanded PTFE works with the polycarbonate urethane, whereas unexpanded PTFE does not? I don't believe we have that evidence. I also don't think there's evidence that either of them works with, that polycarbonate urethane works with either expanded or unexpanded. Well, you're claiming the latter. We are. That's correct. And you don't have evidence that that works? We have evidence that it works in our application, but we didn't, there's not a compare between the two. I don't believe. Any more questions, Mr. Clerk? More questions? Okay. Thank you. We'll take them under advisement. Thank you both.